1

2

3

4

5

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

6

7

8

9

10

11

12

NORTHERN INSURANCE COMPANY
OF NEW YORK,

       Plaintiff,

v.

NATIONAL FIRE & MARINE
INSURANCE COMPANY,

       Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

2:11-CV-01672-PMP-GWF


ORDER

13          Presently before the Court is Plaintiff Northern Insurance Company of New

14  York's Motion for Partial Summary Judgment (Doc. #38), filed on January 16, 2013.

15  Defendant National Fire & Marine Insurance Company filed an Opposition (Doc. #45) on

16  February 14, 2013.  Plaintiff filed a Reply (Doc. #47) on February 25, 2013.

17          Also before the Court is Defendant National Fire & Marine Insurance Company's

18  Motion to Strike (Doc. #52), filed on March 13, 2013.  Plaintiff filed an Opposition (Doc.

19  #53) and Countermotion to Modify the Protective Order (Doc. #54) on April 1, 2013.

20  Defendant filed a Reply (Doc. #59) and Opposition to the Countermotion (Doc. #60) on

21  April 11, 2013.  Plaintiff filed a Reply (Doc. #62) on April 19, 2013.

22  **I. BACKGROUND**

23          In 2008, the Latigo Condominium Unit-Owners' Association, Inc. brought suit

24  against a variety of companies related to the companies' work on improvements and

25  construction at the Silverado Hills Apartments, which later was converted into the Latigo

26  condominium community.  (Mot. Summ. J. (Doc. #38), Ex. 1.)  The Latigo Condominium

Unit-Owners' Association, Inc. alleged that the property "has experienced, and continues to experience, defects and deficiencies, and damages resulting therefrom." (Id. at 7.)  The alleged defects "include, but are not necessarily limited to, defects and deficiencies in the design, manufacture, construction and/or installation of various architectural systems and components, including but not limited to:  roof assemblies and components, stucco assemblies and components, [and] concrete assemblies and components . . . ." (Id.) According to the Latigo complaint, the defects resulted in damage, including "water intrusion, mold growth and damage throughout various construction assemblies and cracked, spalling and/or damaged stucco, drywall and concrete." (Id.)  The Latigo complaint further alleged that the defects "were created as a result of defective/deficient planning, design, construction, development, supervision, supplying of improper or defective materials, inspection and manufacture by Defendants." (Id. at 8.)  The Latigo complaint contains no factual allegations as to when the alleged defects caused damage to the property.

Among the defendants in the Latigo action was The RAMM Corporation ("RAMM").  (Id. at 5.)  Defendant National Fire & Marine Insurance Company ("National Fire") insured RAMM under successive commercial general liability policies from November 2002 through November 2007.  (Mot. Summ. J., Decl. of William Reeves ["Reeves Decl."], Exs. 1-5.)  Under the polices, National Fire was obligated to "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." (Reeves Decl., Ex. 1 at NFM051445, Ex. 2 at NFM051492, Ex. 3 at NFM051549, Ex. 4 at NFM051606, Ex. 5 at NFM051692.)  The policies imposed upon National Fire "the right and duty to defend the insured against any 'suit' seeking those damages.  However, [National Fire has] no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply." (Reeves Decl., Ex. 1 at NFM051445, Ex.

2 at NFM051492, Ex. 3 at NFM051549, Ex. 4 at NFM051606, Ex. 5 at NFM051692.)  The policies cover only property damage "caused by an 'occurrence'" which "occurs during the policy period."  (Reeves Decl., Ex. 1 at NFM051445, Ex. 2 at NFM051492, Ex. 3 at NFM051549, Ex. 4 at NFM051606, Ex. 5 at NFM051692.)  The policies define "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."  (Reeves Decl., Ex. 1 at NFM051458, Ex. 2 at NFM051505, Ex. 3 at NFM051562, Ex. 4 at NFM051619, Ex. 5 at NFM051705.)  The policies also included various provisions limiting or excluding coverage.

On December 5, 2008, National Fire advised RAMM that it would not defend RAMM in the Latigo action because National Fire "has initially determined that the . . . Policies do not insure you against this alleged loss."  (Reeves Decl., Ex. 6 at NFM013755.)  In reaching this determination, National Fire cited to the policies' provisions regarding what the policies covered, the policies' definitions of certain terms, and several exclusions.

Among the exclusions National Fire cited was the "Exclusion of Damages Commencing Prior to Policy Period."  (Reeves Decl., Ex. 6 at NFM013756-58.)  National Fire indicated that the documentation it had received up to that point indicated that RAMM worked at Latigo from October 1996 to June 1998, and thus the alleged property damage began prior to National Fire's first policy issued to RAMM in 2002.  (Id. at NFM013759.)

National Fire also referenced an "Election of Insurance Carrier for Defense" endorsement pursuant to which National Fire contended that RAMM's request that another insurance company defend RAMM in the Latigo action made the National Fire policies inapplicable.  (Id.)  Further, National Fire relied on a "Limitation on a Duty to Defend" endorsement, which contained similar limitations regarding the insured's request to have another insurer defend the action.  (Id. at NFM013759-60.)  Based on these limitations, National Fire took the position that "[t]o the extent [RAMM has] requested any other insurance company to defend the Suit in whole or in part, regardless of whether the request

1   has been accepted or accepted under a reservation of rights, National Fire has no duty to

2   defend [RAMM] against the Suit."  (Id. at NFM013761.)

3          National Fire also relied on exclusions related to "Other Insurance," pursuant to

4   which National Fire contended that "[a]ny coverage that would be provided under these

5   Policies is excess over any other available coverage whether it is primary, pro rata,

6   contributory, excess, contingent, or on any other basis.  Furthermore, [National Fire has] no

7   duty to defend any suit when this insurance is excess."  (Id. at NFM013763-65.)  Finally,

8   National Fire relied on various exclusions related to RAMM's work, work product,

9   construction management errors, subsidence, and liability for contractors or sub-contractors.

10  (Id. at NFM013765-70.)

11         Plaintiff Northern Insurance Company of New York ("Northern") brought the

12  present action against National Fire in Nevada state court in September 2011, and National

13  Fire removed the action to this Court.  (Notice of Corrected Image (Doc. #4), Ex. A.)  In its

14  Complaint, Northern alleges that it issued commercial general liability policies to many

15  companies which also were insured by National Fire, including RAMM.  (Id. at 2, 29 (count

16  42).)  According to the Complaint, unlike National Fire, Northern incurred expenses in

17  connection with defending and/or settling various lawsuits against the co-insureds,

18  including the Latigo action against RAMM.  (Id. at 2, 8, 29.)  Northern thus seeks a

19  declaration that National Fire owed a duty to defend the co-insureds in various actions,

20  including RAMM in the Latigo case.  (Id. at 29.)  Northern also seeks a declaration that

21  National Fire must reimburse Northern for funds expended for the defense and settlement of

22  claims asserted against RAMM and other co-insureds in the underlying cases.  (Id. at 41.)

23         Northern now moves for partial summary judgment, arguing no genuine issue of

24  material fact remains that National Fire owed a duty to defend RAMM in the Latigo action.

25  National Fire responds by moving to strike the exhibits supporting Northern's Motion for

26  Partial Summary Judgment.  National Fire also opposes partial summary judgment on the

merits, arguing Northern's Motion is improper, and genuine issues of fact remain as to whether National Fire appropriately determined it had no duty to defend RAMM in the Latigo action.  In response to National Fire's Motion to Strike, Northern countermoves to modify a protective order in a related action.

**II.  MOTION TO STRIKE (Doc. #52)/COUNTERMOTION TO MODIFY PROTECTIVE ORDER (Doc. #54)**

The parties have expended an extraordinary amount of resources litigating the appropriate use of the documents attached to Northern's Motion for Partial Summary Judgment.  They have done so even though no one ultimately disputes the documents are authentic and National Fire attached the same exhibits to its Opposition.  Furthermore, it is unclear why the particular documents at issue–National Fire's policies and denial letter to RAMM–are subject to a protective order.  Regardless, after the Motion to Strike and Countermotion to Modify the Protective Order were fully briefed, the parties stipulated to a protective order in the present case.  In light of the stipulated protective order, the fact that National Fire will produce the same documents in the present case, and that National Fire never has disputed the exhibits' authenticity and relied on the same exhibits in its Opposition, the Court will deny as moot National Fire's Motion to Strike and Northern's Countermotion to Modify Protective Order.

**III.  MOTION FOR PARTIAL SUMMARY JUDGMENT (Doc. #38)**

Northern argues National Fire improperly denied it had a duty to defend RAMM based on two insurance policy provisions: M-5076, "Election of Insurance Carrier Exclusion of Damages Commencing Prior to Policy Period," and M-5077, "Election of Insurance Carrier for Defense."  Northern argues National Fire could not rely on M-5076 to deny its duty to defend RAMM because the Latigo complaint does not specify when the property sustained damage, and thus a possibility existed that the damage occurred after National Fire's policy commenced.  Northern also argues that a portion of M-5076 and M-

1    5077 are unenforceable as contrary to Nevada public policy because they seek to relieve

2    National Fire of liability if the insured contacts another insurer about defending or covering

3    the claim.

4            National Fire responds that Northern's Motion improperly attempts to bifurcate

5    the resolution of issues in this case despite the fact that the Court rejected Northern's

6    suggestion of bifurcating the case or phasing the discovery.  National Fire also contends

7    Northern's Motion is an attempt to evade having to prove all elements of a contribution

8    claim.  National Fire further contends that even if Northern is correct about M-5076 and M-

9    5077, genuine issues of material fact remain as to whether National Fire owed a duty to

10   defend because National Fire cited numerous other policy provisions in its denial letter to

11   RAMM which Northern did not argue were inapplicable in its partial summary judgment

12   motion.

13           Further, National Fire argues genuine issues of fact remain as to whether its

14   "Election of Insurance Carrier for Defense" endorsement applies because Northern has

15   failed to present evidence that the endorsement conflicts with a similar clause in Northern's

16   policy such that neither policy's clause could be enforced.  National Fire also argues the

17   two challenged endorsements do not violate Nevada public policy because Nevada allows

18   insurers to contractually limit the duty to defend.  National Fire asserts that, in any event,

19   Northern is not its insured and has no standing to make public policy arguments on behalf

20   of National Fire's insureds.

21           Summary judgment is appropriate if the pleadings, the discovery and disclosure

22   materials on file, and any affidavits show that "there is no genuine dispute as to any

23   material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

24   56(a), (c).  A fact is "material" if it might affect the outcome of a suit, as determined by the

25   governing substantive law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  An

26   issue is "genuine" if sufficient evidence exists such that a reasonable fact finder could find

for the non-moving party.  <u>Villiarimo v. Aloha Island Air, Inc.</u>, 281 F.3d 1054, 1061 (9th

Cir. 2002).  Initially, the moving party bears the burden of proving there is no genuine issue

of material fact.  <u>Leisek v. Brightwood Corp.</u>, 278 F.3d 895, 898 (9th Cir. 2002).  After the

moving party meets its burden, the burden shifts to the non-moving party to produce

evidence that a genuine issue of material fact remains for trial.  <u>Id.</u>  The Court views all

evidence in the light most favorable to the non-moving party.  <u>Id.</u>

### A. Bifurcation

National Fire argues that Northern's Motion improperly attempts to bifurcate the

case even though the Court rejected Northern's suggestion of phasing the litigation to

address separately National Fire's duty to defend and any contribution National Fire may

owe as a result of an improper denial of the duty to defend.  However, nothing in the

Federal Rules of Civil Procedure precludes Northern from seeking partial summary

judgment on the issue of National Fire's duty to defend.  Rule 56(a) contemplates that

parties may seek summary judgment on part of a claim or defense.  While the Court denied

formal bifurcation of the case or a phasing of discovery, the Court did not order that the

parties were barred from seeking partial summary judgment on any part of their claims or

defenses.  (Order (Doc. #34).)  The Court therefore will address Northern's Motion.

### B. Exclusion of Damages Commencing Prior to Policy Period - M-5076

National Fire's policies contain form M-5076, an endorsement entitled

"Exclusion of Damages Commencing Prior to Policy Period Broad Form Exclusion."

(Reeves Decl., Ex. 1 at NFM051468, Ex. 2 at NFM051521, Ex. 3 at NFM051577, Ex. 4 at

NFM051633, Ex. 5 at NFM051685.)  This exclusion provides as follows:

> This insurance does not apply to any 'property damage' or 'bodily
> injury' caused by an 'occurrence,' if any such 'property damage' or
> any such 'bodily injury' 'commences' in whole or in part prior to the
> first day of the policy period of this Policy.  This exclusion applies
> even if the 'property damage' or 'bodily injury' continues, is alleged to
> continue, or is deemed to continue during the policy period of this
> Policy.

. . .

> For the purposes of this Endorsement only, 'commences' shall mean: (i) first occurs, is alleged to first occur or is deemed to first occur; or (ii) incepts, is alleged to incept or is deemed to incept; or (iii) first manifests, is alleged to have first manifested, or is deemed to have first manifested.  'Commences' is the earliest point in time of (i), (ii) or (iii).

(Reeves Decl., Ex. 1 at NFM051468, Ex. 2 at NFM051521, Ex. 3 at NFM051577, Ex. 4 at NFM051633, Ex. 5 at NFM051685.)

Northern argues that because the <u>Latigo</u> complaint was silent as to when the property damage occurred, no genuine issue of material fact remains that National Fire improperly denied its duty to defend RAMM based on M-5076's exclusion for property damage commencing before the National Fire policy periods.  National Fire responds that RAMM completed work on the Latigo project in June 1998, and nothing in the <u>Latigo</u> complaint alleges that property damage first occurred during National Fire's policy period, thus no possibility of coverage under the National Fire policies existed.  National Fire also argues M-5076 precludes coverage not only when property damage first occurred, but when it is alleged to have first occurred.  National Fire contends that because Northern and its affiliate, which insured RAMM prior to National Fire, both defended RAMM in the <u>Latigo</u> action, the property damage must have commenced prior to National Fire's policy periods.

Under Nevada law, an insurer's "duty to defend is broader than the duty to indemnify." <u>United Nat'l Ins. Co. v. Frontier Ins. Co., Inc.</u>, 99 P.3d 1153, 1158 (Nev. 2004).  An insurer owes a duty to defend its insured "whenever it ascertains facts which give rise to the potential of liability under the policy." <u>Id.</u> (quotation omitted).  Potential liability under the policy exists when coverage is "arguable or possible." <u>Id.</u>  To determine whether an insurer owes a duty to defend, the Court must compare the underlying complaint's allegations with the insurance policy's terms. <u>Id.</u>  Doubts regarding whether the duty to defend arises must be resolved in the insured's favor. <u>Id.</u>

///

Comparing the Latigo complaint to the policy, no genuine issue of material fact remains that coverage under the National Fire policies was "arguable or possible" with respect to when the property damage first commenced. The Latigo complaint is silent as to when the alleged property damage occurred. Consequently, it was possible that although RAMM ceased working on the property in 1998, property damage did not occur until after the National Fire policies went into effect. As this Court previously has explained, the

> alleged property damage could have been an immediate consequence of the alleged defects or it could have occurred at almost any time after the completion of construction. For example, an improperly mounted chandelier could fall years after it was improperly mounted, yet the damage to the floor would not occur until the chandelier actually fell. Thus, the Court finds that just because the defects existed before the National Fire Policy incepted, it does not mean that the property damage also occurred at that time.

United Nat'l Ins. Co. v. Assurance Co. of Am., 2:10-CV-01086-MMD-RJJ, 2012 WL 1931521, at *4 (D. Nev. May 29, 2012) (unpublished).

National Fire's argument that the Latigo complaint's failure to allege an inception date means there is no possibility of coverage turns the duty to defend on its head. National Fire, as the insurer, must demonstrate no possibility of coverage, and the Latigo complaint's failure to allege an inception date creates, rather than negates, the possibility of coverage. Further, National Fire's argument that because Northern and its affiliate agreed to defend RAMM shows the property damage must have incepted prior to the National Fire policy periods is without merit. That Northern and its affiliate accepted their duty to defend based on the Latigo complaint's ambiguity regarding when property damage occurred does not establish there is no possibility that some property damage first commenced during the National Fire policy periods. The Court therefore will grant partial summary judgment in Northern's favor to the extent that no genuine issue of material fact remains that National Fire did not properly rest its decision to deny a duty to defend RAMM in the Latigo action based on when the alleged property damage incepted under M-5076.

9

**C.  Election of Insurance Carrier for Defense - M-5077 & M-5076**

National Fire's policies contain form M-5077, an endorsement entitled "Election of Insurance Carrier for Defense Limited Duty to Defend Broad Form Limitation."  (Reeves Decl., Ex. 1 at NFM051469, Ex. 2 at NFM051522, Ex. 3 at NFM051578, Ex. 4 at NFM051605, Ex. 5 at NFM051686.)  This exclusion provides as follows:

> If any insured believes that more than one insurance company may have the duty to defend a "suit" for which coverage is provided under this Policy, that insured must elect in writing either to request us to defend the insured or to request one or more other insurance companies to defend the insured with regard to that "suit."
> . . .
> If we are providing a defense for any insured to any "suit," including a defense under reservation of rights, and that insured or any other insured requests the defense of such "suit" in whole or in part by any other insurance carrier, regardless of whether such insurance carrier agrees to provide a defense or agrees to provide a defense under a reservation of rights, then our duty to defend ends and we shall have the right, but not the obligation, to withdraw from any further participation in the defense of that "suit."

(Reeves Decl., Ex. 1 at NFM051469, Ex. 2 at NFM051522, Ex. 3 at NFM051578, Ex. 4 at NFM051605, Ex. 5 at NFM051686.[1])  M-5076 has similar language providing that:

> If any insured requests an insurance company, including us, to defend, pay or indemnify any amount or otherwise respond to any claim or "suit" under any insurance policy incepting prior to the first day of the policy period of this Policy, this Policy shall not apply to damages sought in that claim or "suit."

(Reeves Decl., Ex. 1 at NFM051468, Ex. 2 at NFM051521, Ex. 3 at NFM051577, Ex. 4 at NFM051633, Ex. 5 at NFM051685.)

Northern argues no genuine issue of material fact remains that National Fire improperly denied its duty to defend RAMM because M-5077 and M-5076 are

---

[1]  The policy running from November 2006 to November 2007 uses form M-5077a, which is phrased differently, but still provides that National Fire will have no duty to defend if another insurer "has been asked by or on behalf of the insured to defend the insured against any part of that 'suit,' regardless of whether such insurer agrees to provide a defense." (Reeves Decl., Ex. 5 at NFM051686.)

unenforceable escape clauses.  National Fire responds that Nevada law permits insurers to limit their contractual duty to defend.  National Fire also argues Northern is not National Fire's insured, and thus Northern has no standing to make public policy arguments regarding National Fire's relationship with its insured.

An insurer's duties to its insured "are dictated by the terms of its contract with the policyholder," and consequently "an insurer is free to contractually limit [its] duties," including the duty to defend.  Benchmark Ins. Co. v. Sparks, 254 P.3d 617, 621 (Nev. 2011).  Courts will enforce the parties' insurance contract as written to effectuate the parties' intent unless doing so will violate public policy.  Farmers Ins. Exch. v. Neal, 64 P.3d 472, 473 (Nev. 2003); Nelson v. Cal. State Auto. Ass'n Inter-Insurance Bureau, 956 P.2d 803, 805 (Nev. 1998).

Nevada has not addressed whether insurance contract provisions such as those in M-5077 and M-5076 which purport to eliminate the duty to indemnify or defend based on an insured's request that another insurer defend the action are void as a matter of public policy.  The Court therefore must predict how Nevada's highest court would resolve the issue.  Giles v. Gen. Motors Acceptance Corp., 494 F.3d 865, 872 (9th Cir. 2007).  "In answering that question, this court looks for 'guidance' to decisions by intermediate appellate courts of the state and by courts in other jurisdictions."  Id. (quotation omitted).

The Court predicts Nevada would hold such provisions void as violating Nevada public policy.  Nevada looks unfavorably on attempts by an insurance company to "defer or limit its liability on the basis of the availability of other insurance," and does not hesitate to declare such provisions void.  See Yosemite Ins. Co. v. State Farm Mut. Auto. Ins., 653 P.2d 149, 150 (Nev. 1982) (internal quotation marks omitted); Travelers Ins. Co. v. Lopez, 567 P.2d 471, 474 (Nev. 1977).  The escape clauses in M-5077 and M-5076 are particularly egregious attempts to evade the duty to defend based on the existence of other insurance. ///

Under M-5077 and M-5076, National Fire purports to escape liability or a duty to defend if the insured merely requests any other insurer to defend, even if the other insurer denies coverage and even if National Fire otherwise would have been required to defend or indemnify its insured under the policies.  "This could happen because of a mere mistake on the insured[']s part or because the plaintiff misstates a date in the complaint and later amends or the facts turn out to be different than the plaintiff originally believed."  United Nat'l Ins. Co., 2012 WL 1931521, at *5.  Further, by the policies' terms, this exclusion could apply if "any insured" requests another insurer to defend, and thus even an insured who did not tender the claim to another insurer still could be deprived of the defense for which that insured paid premiums if any other insured requests another insurer to defend.

These provisions put the insured in an untenable situation, particularly an insured like RAMM in the Latigo action, who is sued via a complaint which contains no factual allegations regarding when the alleged property damage occurred.  Faced with uncertainty about which of the successive insurers might cover the claim, National Fire's policy provisions would require the insured to guess which insurer covers the claim before asking any of them to defend the claim.  If the insured guesses incorrectly, the insured may face denial of coverage under National Fire's policies due to the operation of M-5077 and M-5076, and also face denial from the other insurer for failing to timely tender the claim if the insured did not present the claim to the other insurer out of fear of losing coverage under the National Fire policies.  M-5077 and M-5076 thus operate to deprive the insured of one of the most important benefits for which the insured paid premiums: the fundamental duty to defend.  See Allstate Ins. Co. v. Miller, 212 P.3d 318, 324 (Nev. 2009) ("Primary liability insurance policies create a cascading hierarchy of duties between the insurer and the insured.  At the top of this hierarchy are two general duties: the duty to defend and the duty to indemnify."); Pruyn v. Agric. Ins. Co., 42 Cal. Rptr. 2d 295, 302-03 (Cal. Ct. App. 1995) ("An insured's desire to secure the right to call on the insurer's superior resources for the

defense of third party claims is, in all likelihood, typically as significant a motive for the purchase of insurance as is the wish to obtain indemnity for possible liability." (quotation omitted)).

Nevada has voided "other insurance" provisions to "'avoid arbitrariness in the selection of conflicting clauses,' 'discourage litigation between insurers,' and 'provide a basis for uniformity of result.'" Md. Cas. Co. v. Am. Safety Indem. Co., No. 2:10-CV-02001-MMD-PAL, 2013 WL 1007707, at *7 (D. Nev. Mar. 12, 2013) (quoting Travelers, 567 P.2d at 474). These policy concerns support voiding M-5077 and M-5076's "other insurance" provisions. As this Court previously has explained:

> allowing an insurance company to limit its coverage by writing an 'other insurance' provision that is 'more repugnant' than another's would only encourage litigation between insurers, produce varied results, and ultimately lead to arbitrary selections between equally repugnant clauses. Additionally, [National Fire's] attempt to limit its policy's coverage on the basis of availability of other insurance is precisely that which Nevada law seeks to avoid.

Id. M-5077 and M-5076's "other insurance" provisions therefore are void as against Nevada public policy. Because the provisions are void, the Court rejects National Fire's argument that Northern lacks standing to challenge the provisions. See United Nat'l Ins. Co., 2012 WL 1931521, at *6 ("[T]he public policy against escape clauses such as this is that such clauses should not exist in insurance contracts, not that they should only be voided under particular circumstances."). The Court therefore will grant partial summary judgment in Northern's favor to the extent that no genuine issue of material fact remains that National Fire did not properly rest its decision to deny a duty to defend RAMM in the Latigo action based on the "other insurance" provisions in M-5077 and M-5076.

**D. Other Policy Provisions**

In its Opposition to Northern's Motion for Partial Summary Judgment, National Fire argues that it denied a duty to defend RAMM in the Latigo litigation for numerous reasons beyond M-5076 and M-5077. National Fire thus contends genuine issues of

material fact remain as to whether National Fire properly denied a duty to defend RAMM. In its Reply, Northern asserts that National Fire, as the insurer, must establish no possibility of coverage to deny the duty to defend.  Northern contends National Fire has not established that any of the other policy provisions actually applied, and thus no genuine issue of material fact remains that National Fire improperly denied a duty to defend RAMM in the Latigo action.

Northern has failed to meet its initial burden under Rule 56 of showing no genuine issue of material fact remains that National Fire improperly denied a duty to defend RAMM in the Latigo action.  By Northern's own evidence, National Fire relied on numerous policy provisions which Northern did not even identify in its Motion for Summary Judgment, much less argue and present evidence as to why National Fire could not rely on those policy provisions to deny a duty to defend.  (Reeves Decl., Ex. 6.) Northern's failure to present argument and evidence on the other policy provisions is both a failure of carrying its initial burden under Rule 56 and a consent to denial of the motion under Local Rule 7-2(d).  Accordingly, the Court's rulings as to M-5076 and M-5077 are limited to a grant of partial summary judgment that these two policy provisions cannot support National Fire's denial of a duty to defend RAMM in the Latigo action.  However, whether National Fire properly denied a duty to defend based on other policy provisions remains an open question.

**IV. CONCLUSION**

IT IS THEREFORE ORDERED that Plaintiff Northern Insurance Company of New York's Motion for Partial Summary Judgment (Doc. #38) is hereby GRANTED in part and DENIED in part.  The Motion is granted to the extent that no genuine issue of material fact remains that National Fire did not properly rest its decision to deny a duty to defend RAMM in the Latigo action based on (1) when the alleged property damage incepted under M-5076 or (2) the "other insurance" provisions in M-5077 and M-5076.  The Motion is

denied in all other respects.

IT IS FURTHER ORDERED that Defendant National Fire & Marine Insurance Company's Motion to Strike (Doc. #52) is hereby DENIED as moot.

IT IS FURTHER ORDERED that Plaintiff's Countermotion to Modify the Protective Order (Doc. #54) is hereby DENIED as moot.

IT IS FURTHER ORDERED that the parties shall file a proposed joint pretrial order on or before August 3, 2013.

DATED: July 12, 2013

_____
PHILIP M. PRO
United States District Judge

15